## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**NISA SUANPHAIRIN**                              **CIVIL ACTION**

**VERSUS**                                        **NO. 23-3346**

**SARA SADI ATAYA**                               **SECTION "O"**

## ORDER AND REASONS

Before the Court in this tortious-interference-with-custody suit between former sisters-in-law are five motions. First, Defendant Sara Ataya moves[1] the Court to dismiss Plaintiff Nisa Suanphairin's original complaint for lack of personal jurisdiction, improper venue, failure to state a claim, and failure to join a party under Rule 19. The Court denies that motion as moot because Suanphairin filed an amended complaint that superseded the original complaint and rendered it of no legal effect.

Second, Suanphairin moves[2] the Court to review—and reverse—Magistrate Judge van Meerveld's order and reasons denying her motion for leave to conduct limited discovery into the basis for specific personal jurisdiction over Sara Ataya. The Court denies the motion and affirms Judge van Meerveld's denial of limited jurisdictional discovery because Judge van Meerveld correctly held that Suanphairin failed to carry her burden to show that limited jurisdictional discovery is merited.

---

[1] ECF No. 8. Because this case involves two Atayas—Defendant Sara Ataya and her brother, Khalid Ataya—the Court refers to them by their first and last names.

[2] ECF No. 34.

Third, Suanphairin moves[3] the Court to continue its consideration of Sara Ataya's motion to dismiss pending the completion of limited jurisdictional discovery. The Court denies the motion because Suanphairin will not receive such discovery.

Fourth, Sara Ataya moves[4] the Court to dismiss Suanphairin's amended complaint for lack of personal jurisdiction, improper venue, failure to state a claim, and failure to join a party under Rule 19. The Court grants the motion to dismiss for lack of personal jurisdiction because Suanphairin fails to carry her burden to make a *prima facie* showing that the Court has personal jurisdiction over Sara Ataya. The Court therefore dismisses this case without prejudice for lack of personal jurisdiction.

Finally, Sara Ataya moves[5] for sanctions against Suanphairin's counsel under Rule 11. The Court denies the motion because Sara Ataya failed to carry her burden to show that she fully complied with Rule 11(c)(2)'s "safe harbor" provision.

Accordingly, for these reasons and those that follow, Sara Ataya's motion[6] to dismiss Suanphairin's original complaint is **DENIED** as moot; Suanphairin's motion[7] for review is **DENIED**; Suanphairin's motion[8] to continue is **DENIED**; Sara Ataya's motion[9] to dismiss Suanphairin's operative amended complaint is **GRANTED**; and Sara Ataya's motion[10] for sanctions is **DENIED**.

---

[3] ECF No. 15.
[4] ECF No. 35.
[5] ECF No. 24.
[6] ECF No. 8.
[7] ECF No. 34.
[8] ECF No. 15.
[9] ECF No. 35.
[10] ECF No. 24.

## I.       BACKGROUND

This tort case stems from a custody dispute between Suanphairin and her ex-husband Khalid Ataya. Suanphairin claims that Sara Ataya—Suanphairin's former sister-in-law—helped Suanphairin's ex-husband (1) conceal Suanphairin's two kids in the United States and abroad; (2) avoid investigations into Suanphairin's ex-husband's alleged abuse of the kids; (3) escape execution of court orders for Suanphairin's ex-husband's arrest and for the return of the kids to Louisiana; and (4) destroy Suanphairin's relationship with the kids.[11] Because this case comes to the Court on Sara Ataya's motions to dismiss (among other motions), the facts that follow are drawn from the allegations of Suanphairin's operative amended complaint. *See generally Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 806 (2019).

Suanphairin is the mother of two kids—ages six and nine.[12] Her ex-husband, Khalid Ataya, is the father.[13] Sara Ataya is Khalid Ataya's sister and Suanphairin's former sister-in-law.[14] Suanphairin lives in Texas;[15] Sara Ataya lives in Virginia;[16] and Khalid Ataya lived in Jefferson Parish with the kids from 2016–2021.[17]

Sometime in summer 2021, Suanphairin allegedly "discovered" that her kids "reported and displayed other evidence" that they had been "sexually molested and abused" by Khalid Ataya while her kids lived with him in Jefferson Parish.[18]

---

[11] *See generally* ECF No. 33 (operative amended complaint).
[12] *Id.* at ¶ 1.
[13] *Id.*
[14] *Id.* at ¶ 2.
[15] *Id.* at ¶ 1.
[16] *Id.* at ¶ 2.
[17] *Id.* at ¶ 5.
[18] *Id.* at ¶ 6.

From January 2022 until now, Khalid Ataya has allegedly "secreted" the kids in the United States, in Jordan, and in other Middle Eastern countries.[19] Khalid Ataya allegedly did so without Suanphairin's consent and "for the specific purpose" of (1) "avoiding investigations" into his alleged abuse of the kids and possible prosecution; (2) destroying the kids' relationship with Suanphairin; and (3) depriving Suanphairin of all custody and contact with the kids.[20]

Since January 2022, a state court has allegedly "issued several orders requiring Khalid Ataya to return the children to the United States and to present them in open court."[21] The state court also allegedly "ordered the attachment of Khalid Ataya for continually violating and ignoring the court's orders."[22] And the same state court also granted Suanphairin joint custody of the kids.[23] Still, Suanphairin alleges that she "has had absolutely no contact whatsoever" with the kids since February 2022, and Suanphairin "has not known of their whereabouts other than their likely presence in Jordan and other countries in the Middle East."[24] Suanphairin says all of that is "because of" Sara Ataya's alleged "tortious conduct."[25]

---

[19] *Id.* at ¶ 8.
[20] *Id.*
[21] *Id.* at ¶ 9.
[22] *Id.*
[23] *Id.*
[24] *Id.* at ¶ 10.
[25] *Id.*

Sara Ataya's alleged "tortious conduct" is described in full in paragraph 11 of Suanphairin's operative amended complaint:

> Since January, 2022, to the present Defendant Sara Sadi Ataya has, without [Suanphairin's] consent, in Virginia, Louisiana, and other locations, continuously intentionally, willfully, maliciously and tortiously interfered with [Suanphairin's] legal custody rights and maternal relationship with her two children by conspiring with, and aiding and abetting her brother Khalid Ataya, and providing him financial and logistical support, for the specific purposes of assisting him in a) secreting the children inside and outside of the United States, in Jordan and other nations, b) avoiding any investigations into the children's abuse allegations and his possible subsequent criminal prosecution, c) avoiding the execution of the court orders for his arrest and the return of the children to Louisiana, and d) destroying the relationship between the children and [Suanphairin].[26]

Based on that alleged "tortious conduct," Suanphairin brought this tortious-interference-with-child-custody case against Sara Ataya under the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). Suanphairin seeks $3 million in compensatory damages and another $3 million in punitive damages.[27]

Suanphairin alleges that the Court has personal jurisdiction over Sara Ataya because she allegedly "travel[ed]" to the Jefferson Parish home of Khalid Ataya and the kids "on several occasions" from 2016–2021 and "visit[ed] and interact[ed]" with the kids and Khalid Ataya during those visits; and because Sara Ataya allegedly "otherwise engag[ed] in communications and other interactions with Khalid Ataya during the years 2021 and 2022–2023 for the specific purpose of committing the tortious conduct" described in paragraph 11 of the operative amended complaint.[28]

---

[26] *Id.* at ¶ 11.
[27] *Id.* at ¶¶ 13–14.
[28] *Id.* at ¶ 5.

5

After various preliminaries, Sara Ataya moved to dismiss Suanphairin's original complaint for lack of personal jurisdiction, improper venue, failure to state a claim, and failure to join a party under Rule 19.[29] In a declaration supporting that motion to dismiss, Sara Ataya attested that she has only visited Louisiana twice: in November 2017 and December 2019; that she lived outside the United States from October 2021–March 2022; and that she has "not traveled to Louisiana or made any contacts with Louisiana" since returning to the United States in March 2022.[30]

In response to Sara Ataya's motion to dismiss Suanphairin's original complaint, Suanphairin moved for a 60-day continuance of the Court's consideration of Sara Ataya's motion to dismiss to allow Suanphairin to conduct limited jurisdictional discovery.[31] Later that day, Suanphairin separately moved for leave to conduct limited jurisdictional discovery.[32] In that motion, Suanphairin asked for leave to depose Sara Ataya and to serve requests for production on her "regarding [her] argument that the Court lacks personal jurisdiction over her."[33] The motion for limited jurisdictional discovery was referred to Judge van Meerveld; the motion to continue consideration of the motion to dismiss remained with the undersigned.

While the motion for limited jurisdictional discovery was pending before Judge van Meerveld, two more relevant motions were filed. First, Suanphairin moved for leave to amend her complaint to "merely refine[ ] the allegations of the contextual

---

[29] ECF No. 8.
[30] ECF No. 8-2.
[31] ECF No. 15.
[32] ECF No. 17.
[33] *Id.* at 1.

predicate under which the claims against [Sara Ataya] arise."[34] Second, Sara Ataya moved for sanctions against Suanphairin's counsel.[35] In the sanctions motion, Sara Ataya contended that Suanphairin's counsel should be sanctioned because he "lack[ed] any factual or evidentiary basis" for his venue and personal-jurisdiction arguments.[36] Sara Ataya also contended that Suanphairin's counsel should be sanctioned because the original complaint he drafted contained "unsupportable and heinous claims of sexual abuse that have already been dismissed" by the state court handling the custody litigation between Suanphairin and Khalid Ataya.[37]

Judge van Meerveld granted Suanphairin leave to amend her complaint but denied Suanphairin leave to conduct limited jurisdictional discovery.[38] As for the amendment, Judge van Meerveld reasoned that justice required granting Suanphairin leave to amend because the "case is in its early stages," Suanphairin had not "previously sought to amend," and "there is no evidence that the amended pleading is motivated by undue delay or bad faith."[39] As for Suanphairin's request for limited jurisdictional discovery, however, Judge van Meerveld "f[ound] no basis to authorize jurisdictional discovery" because Suanphairin failed to make "a preliminary showing of personal jurisdiction over" Sara Ataya.[40] Judge van Meerveld reasoned that Suanphairin failed to make that showing because Suanphairin failed

---

[34] ECF No. 23; ECF No. 23-3 at 1.
[35] ECF No. 24.
[36] *Id.* at 6.
[37] *Id.* at 7.
[38] ECF No. 32.
[39] *Id.* at 5.
[40] *Id.* at 8.

to identify any alleged contact between Sara Ataya and Louisiana that arises from, or is related to, Suanphairin's tortious-interference-with-child-custody claim.[41]

Two motions followed Judge van Meerveld's ruling. First, Suanphairin moved the Court to review—and reverse—Judge van Meerveld's denial of jurisdictional discovery under Federal Rule of Civil Procedure 72(a).[42] And second, Sara Ataya moved the Court to dismiss Suanphairin's amended complaint for essentially the same reasons she moved the Court to dismiss Suanphairin's original complaint—lack of personal jurisdiction, improper venue, failure to state a claim, and failure to join a party under Rule 19.[43] The Court considers the pending motions in turn.

## II.   ANALYSIS

### A.   Motion to Dismiss the Original Complaint[44]

First, Sara Ataya moves to dismiss Suanphairin's original complaint for lack of personal jurisdiction, improper venue, failure to state a claim, and failure to join a party under Rule 19.[45] After Sara Ataya moved to dismiss Suanphairin's original complaint, Judge van Meerveld granted Suanphairin leave to file an amended complaint.[46] Because Suanphairin's amended complaint does not refer to or adopt or incorporate by reference her original complaint,[47] her amended complaint "supersedes the original complaint and renders it of no legal effect." *King v. Dogan*,

---

[41] *Id.*
[42] ECF No. 34.
[43] ECF No. 35.
[44] ECF No. 8.
[45] ECF No. 8.
[46] ECF No. 32.
[47] ECF No. 33.

31 F.3d 344, 346 (5th Cir. 1994) (per curiam) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)). And because the original complaint "is of no legal effect," *id.*, the Court denies Sara Ataya's motion to dismiss that complaint as moot.

### B.    Motion for Review of the Denial of Jurisdictional Discovery[48]

Next, Suanphairin moves the Court under Federal Rule of Civil Procedure 72(a) to review Judge van Meerveld's order and reasons denying Suanphairin's motion for leave to conduct limited jurisdictional discovery.[49] Under Rule 72(a), a party may object to a magistrate judge's order on a non-dispositive motion within 14 days after being served with a copy. FED. R. CIV. P. 72(a). A district court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A) (providing that a district court "may reconsider" a magistrate judge's order on a non-dispositive motion "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"). "Courts have interpreted this language to create distinct standards of review for findings of fact and conclusions of law." *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, 431 F. Supp. 3d 857, 861 (N.D. Tex. 2020). Legal conclusions are reviewed *de novo*; findings of fact are reviewed for clear error. *See Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has

---

[48] ECF No. 34.
[49] *Id.*

9

been committed.'" *Clark v. Mobil Oil Corp.*, 693 F.2d 500, 501–02 (5th Cir. 1982) (per curiam) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In her timely Rule 72(a) objection, Suanphairin contends that Judge van Meerveld "wrongfully weigh[ed] the merits" and did not accept as true the allegations of her operative amended complaint when evaluating whether she had made a preliminary showing of personal jurisdiction.[50] Suanphairin submits that Judge van Meerveld should have granted her leave to conduct jurisdictional discovery because she "made a preliminary showing of factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts" between Sara Ataya and Louisiana on her tortious-interference-with-child-custody cause of action.[51]

Sara Ataya opposes.[52] She submits that the Court should deny Suanphairin's motion for Rule 72(a) review because Judge van Meerveld correctly held that Suanphairin failed to make a preliminary showing of personal jurisdiction.[53]

The Court overrules Suanphairin's Rule 72(a) objection and affirms Judge van Meerveld's order and reasons denying Suanphairin's request for limited jurisdictional discovery because Judge van Meerveld correctly concluded that Suanphairin failed to carry her burden to show that limited jurisdictional discovery is merited.

The Court "has broad discretion in the type and extent of discovery it permits." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 902 (5th Cir. 2024) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)). "As the party opposing dismissal and requesting

---

[50] *Id.* at 4–6.
[51] *Id.* at 10 (emphasis omitted) (internal quotation marks omitted).
[52] ECF No. 38.
[53] *Id.* at 1–7.

discovery," Suanphairin "bear[s] the burden of demonstrating the necessity of [jurisdictional] discovery." *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). "To merit jurisdictional discovery," Suanphairin "must show that it is 'likely to produce the facts needed to withstand' dismissal.'" *Johnson v. TheHuffingtonPost.Com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021) (quoting *Davila*, 713 F.3d at 264). And to withstand Rule 12(b)(2) dismissal here, Suanphairin must establish, among other requirements, that Suanphairin's tortious-interference-with-child-custody cause of action "arises out of or results from" Sara Ataya's purposeful contacts with the State of Louisiana. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (internal quotation marks and citation omitted).

As Judge van Meerveld observed,[54] Suanphairin fails to identify what evidence Suanphairin might obtain in discovery that would likely establish that her tortious-interference-with-child-custody cause of action arises out of or results from Sara Ataya's purposeful contact with Louisiana.[55] Instead, Suanphairin's motion for limited discovery merely stated that she "contends that there are more contacts and communications with [Sara Ataya's] brother and the children than are set forth in [Sara Ataya's] affidavit."[56] That motion did not connect any of those supposed "contacts and communications"[57] with Louisiana or the time period—January 2022 to present—of Suanphairin's tortious-interference-with-child-custody cause of action.

---

[54] ECF No. 32 at 7.
[55] *See generally* ECF No. 17 & 17-2.
[56] ECF No. 17-2 at 2.
[57] *Id.*

Nor has Suanphairin shown that Judge van Meerveld erred in concluding that she failed to make a preliminary showing of specific personal jurisdiction over Sara Ataya. The alleged facts underlying Suanphairin's tortious-interference-with-child-custody cause of action occurred in January 2022,[58] and Judge van Meerveld found that "[a]ll contacts with Louisiana that [Suanphairin] cites were *before*" January 2022.[59] Suanphairin has not shown that factual finding to be clearly erroneous.

Ultimately, Suanphairin "does no more than 'rely on vague assertions that additional discovery will produce needed, but unspecified facts,' which is insufficient to allow jurisdictional discovery." *Pace*, 93 F.4th at 902–03 (quoting *Freeman v. United States*, 556 F.3d 326, 341–42 (5th Cir. 2009)). Suanphairin fails to "make clear which 'specific facts' [she] expects discovery to find." *Johnson*, 21 F.4th at 326 (quoting *Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 797 (N.D. Tex. 2010)). The Court "will not authorize 'a jurisdictional fishing expedition' based on . . . general averments that more discovery will prove" that the Court has specific personal jurisdiction over Sara Ataya. *Id.* (quoting *Bell Helicopter Textron, Inc.*, 729 F. Supp. 2d at 798); *accord, e.g.*, *Pace*, 93 F.4th at 902–03.

Suanphairin's contrary arguments are not persuasive. First, Suanphairin contends that Judge van Meerveld "wrongfully weigh[ed]" the evidence.[60] Not so. Judge van Meerveld applied binding Fifth Circuit precedent that required her to deny Suanphairin's motion because Suanphairin failed to show that the requested

---

[58] ECF No. 33 at ¶ 11.
[59] ECF No. 32 at 7 (emphasis added)
[60] ECF No. 34-1 at 4.

discovery "[was] 'likely to produce the facts needed to withstand'" Sara Ataya's motion. *Johnson*, 21 F.4th 314, 326 (5th Cir. 2021) (quoting *Davila*, 713 F.3d at 264).[61]

Second, Suanphairin contends that Judge van Meerveld should have allowed limited jurisdictional discovery because she "made a preliminary showing of factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts" between Sara Ataya and Louisiana.[62] For starters, Suanphairin forfeited this argument by failing to raise it in her briefing to Judge van Meerveld; nowhere in the briefing on her motion for limited jurisdictional discovery did she contend that she should be permitted limited jurisdictional discovery under this standard.[63] *See, e.g.*, *CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-CV-6623, 2011 WL 13202950, at *1 (E.D. La. Feb. 1, 2011) (holding that Rule 72(a) appellant forfeited "its right to present . . . arguments or materials" to the district court that were "not raise[d] before the magistrate judge").

Forfeiture aside, Suanphairin's argument fails on the merits. The well-pleaded (non-conclusory) factual allegations of the operative complaint do not "suggest with reasonable particularity the possible existence of the requisite contacts" between Sara Ataya and Louisiana with respect to Suanphairin's interference-with-child-custody cause of action.[64] That cause of action rests on the allegation that Sara Ataya "conspire[d] with," "aid[ed] and abet[ted]," and "prov[ided] . . . financial and logistical

---

[61] ECF No. 32 at 6–8.
[62] ECF No. 34-1 at 10 (emphasis omitted) (internal quotation marks omitted).
[63] ECF No. 17 & ECF No. 17-2.
[64] ECF No. 34-1 at 10 (emphasis omitted) (internal quotation marks omitted).

support to" Khalid Ataya from January 2022 "to the present."[65] But the operative complaint does not allege with "reasonable particularity" any conspiratorial acts, any aiding and abetting, or any alleged provision of financial and logistical support by Sara Ataya in, or directed to, Louisiana from January 2022 to today. It therefore fails to make a preliminary showing of specific personal jurisdiction over Sara Ataya.

In sum, Suanphairin failed to show that jurisdictional discovery "is 'likely to produce the facts needed to withstand'" Sara Ataya's motion to dismiss for lack of personal jurisdiction. *Johnson*, 21 F.4th 314, 326 (quoting *Davila*, 713 F.3d at 264). Suanphairin thus failed to carry her burden to show "the necessity" of limited jurisdictional discovery. *Davila*, 713 F.3d at 264. And because Suanphairin failed to carry her burden, Judge van Meerveld correctly denied Suanphairin's motion for leave to conduct limited jurisdictional discovery. The order and reasons[66] denying limited jurisdictional discovery is affirmed; the motion[67] for review is denied.

### C.   Motion to Continue Consideration of Motion to Dismiss[68]

Suanphairin moves the Court to continue its consideration of Sara Ataya's motion to dismiss pending the completion of jurisdictional discovery.[69] Because the Court has affirmed Judge van Meerveld's order denying jurisdictional discovery, Suanphairin will not get jurisdictional discovery. And because Suanphairin will not

---

[65] ECF No. 33 at ¶11.
[66] ECF No. 32.
[67] ECF No. 34.
[68] ECF No. 15.
[69] *Id.* at 1.

get jurisdictional discovery, her motion to continue the Court's consideration of the motion to dismiss pending jurisdictional discovery is denied as moot.

### D.    Motion to Dismiss the Operative Complaint[70]

Sara Ataya moves the Court to dismiss Suanphairin's operative complaint for (1) lack of personal jurisdiction, (2) improper venue, (3) failure to state a claim, and (4) failure to join a party under Rule 19. *See* FED. R. CIV. P. 12(b)(2), 12(b)(3), 12(b)(6), 12(b)(7). We begin by considering whether the Court has personal jurisdiction over Sara Ataya.

### 1.    Lack of Personal Jurisdiction

Sara Ataya contends that the Court should dismiss Suanphairin's operative complaint because the Court lacks personal jurisdiction over her.[71] She reasons that the Court lacks general personal jurisdiction because she has only visited Louisiana twice, and she has not "directed any additional activities towards" Louisiana or "purposefully availed herself of the privileges of conducting activities here."[72] And she reasons that the Court lacks specific personal jurisdiction because Suanphairin's lone cause of action does not arise out of or relate to her contacts with Louisiana.[73]

Suanphairin opposes.[74] She says that she has made a *prima facie* showing of specific personal jurisdiction over Sara Ataya.[75] She reasons that she has sufficiently shown specific personal jurisdiction based on Sara Ataya's "travels to Louisiana to

---

[70] ECF No. 35.
[71] ECF No. 35-1 at 4–6.
[72] *Id.* at 5.
[73] *Id.* at 5–6.
[74] *See generally* ECF No. 37.
[75] *Id.* at 4–12.

visit her brother and the children, followed by seventeen . . . months of weekly and extensive video calls with the two children while they were in Louisiana."[76] She submits that those alleged activities suffice to support specific personal jurisdiction because they "relate[ ] to [Sara Ataya's] alleged participation with her brother in the eventual tortious removal and secreting of the children in a foreign country."[77]

Federal Rule of Civil Procedure 12(b)(2) permits Sara Ataya to move to dismiss Suanphairin's operative complaint for lack of personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2). Because the Court decides Sara Ataya's Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, the Court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of [Suanphairin] any factual conflicts posed by the affidavits." *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) (internal quotation marks and citation omitted). Suanphairin "has the burden to make a *prima facie* showing that personal jurisdiction is proper." *Id.* (internal quotation marks and citation omitted). Importantly, "the *prima-facie*-case requirement does not require the [C]ourt to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (italics added) (citations omitted).

As a federal court sitting in diversity, the Court has personal jurisdiction over Sara Ataya if (1) Louisiana's long-arm statute allows it; and (2) exercising personal jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment. *See id.* Those two inquiries merge here because "[t]he limits of the Louisiana Longarm

---

[76] *Id.* at 10.
[77] *Id.* at 11.

Statute and the limits of constitutional due process are effectively coextensive." *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318 (5th Cir. 2020) (internal quotation marks and citation omitted). That means "the sole inquiry is whether exercising jurisdiction would violate the Due Process Clause." *Id.* (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242–43 (5th Cir. 2008)).

Consistent with due process, personal jurisdiction comes in two form—general and specific. *See Shambaugh & Son, L.P.*, 91 F.4th at 372. "General personal jurisdiction applies 'only when a defendant is essentially at home'" in the forum, "and any and all claims may be brought against a defendant wherever it is subject to such jurisdiction." *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). "[S]pecific personal jurisdiction is narrower and attaches only when there is a sufficient connection between a defendant's forum-related contacts and a plaintiff's cause of action." *Id.* (citing *Ford Motor Co.*, 592 U.S. at 359).

### a.    General Personal Jurisdiction

Suanphairin fails to carry her burden to make a *prima facie* showing of general personal jurisdiction. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Suanphairin alleges (and it is undisputed) that Sara Ataya is a Virginia citizen living in Vienna, Virginia.[78] Sara Ataya is not domiciled in Louisiana, and Suanphairin has not pointed to anything in the record that would otherwise allow the Court to conclude that Sara Ataya "is essentially at home" in Louisiana. *Goodyear*

---

[78] ECF No. 33 at ¶ 2.

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). So, the Court lacks general personal jurisdiction over her. *Accord NavSav Holdings, LLC v. Beber*, No. 1:23-CV-290, — F. Supp. 3d —, 2024 WL 1329786, at *6 (E.D. Tex. Mar. 20, 2024) (finding no general personal jurisdiction over individuals not domiciled in the forum).

### b.    Specific Personal Jurisdiction

Suanphairin similarly fails to carry her burden to make a *prima facie* showing of specific personal jurisdiction. The Court applies a three-step test to decide if it has specific personal jurisdiction: "(1) whether [Sara Ataya] has minimum contacts with [Louisiana], *i.e.*, whether [she] purposely directed [her] activities toward [Louisiana] or purposefully availed [herself] of the privileges of conducting activities there; (2) whether [Suanphairin's] cause of action arises out of or results from [Sara Ataya's] forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Shambaugh & Son, L.P.*, 91 F.4th at 372 (internal quotation marks and citations omitted). If Suanphairin satisfies the first two steps, the burden shifts to Sara Ataya to show that exercising personal jurisdiction over her would be "unfair or unreasonable." *Id.* (internal quotation marks and citation omitted).

Suanphairin fails to carry her burden to satisfy the second step. Considering the well-pleaded—*i.e.*, non-conclusory—allegations of Suanphairin's operative complaint, and resolving in Suanphairin's favor any factual conflicts posed by the parties' sworn submissions, the Court concludes that Suanphairin fails to make a *prima facie* showing that her tortious-interference-with-child-custody cause of action arises out of or results from Sara Ataya's purposeful contacts with Louisiana.

18

The alleged facts underlying Suanphairin's tortious-interference-with-child-custody cause of action occurred "[s]ince January, 2022, to the present."[79] During that period, Suanphairin alleges that Sara Ataya "interfered with [Suanphairin's] legal custody rights and maternal relationship with her two children by conspiring with, aiding and abetting her brother Khalid Ataya, and providing him financial and logistical support . . . ."[80]   But Suanphairin has not connected any of those alleged acts to Sara Ataya's purposeful contacts with Louisiana from January 2022 to today. Indeed, Suanphairin has not identified any alleged conspiratorial act, any alleged aiding and abetting, or any alleged provision of financial and logistical support by Sara Ataya in, or directed to, the State of Louisiana from January 2022 to today.

Considering the well-pleaded allegations of the operative amended complaint, and resolving in Suanphairin's favor any factual conflicts posed by the parties' sworn submissions,[81] the only[82] ties between Sara Ataya and Louisiana are these:

1. From "2016–2021," Sara Ataya "travel[ed] to Jefferson Parish, Louisiana, where [Suanphairin], Khalid Ataya, and the two children lived, and personally visit[ed] and interact[ed] with [Suanphairin's] children and her brother."[83]

2. Sara Ataya visited Khalid Ataya and his son in Louisiana for two days in November 2017.[84]

---

[79] ECF No. 33 at ¶ 11.

[80] *Id.*

[81] *Compare* ECF No. 20-1 (Suanphairin affidavit) *with* ECF No. 35-2 (Sara Ataya declaration).

[82] To be sure, Suanphairin alleges that Sara Ataya "engag[ed] in communications and other interactions with Khalid Ataya" "during the years 2021 and 2022–2023 for the specific purpose of committing the tortious conduct set forth herein." ECF No. 33 at ¶ 5. But Suanphairin does not link any of those alleged "communications and other interactions" to Louisiana. *See id.*

[83] *Id.*  at ¶ 5.

[84] ECF No. 35-2 at ¶ 3.

3.   Sara Ataya visited Khalid Ataya and both of his kids in Louisiana for five days in December 2019.[85]

4.   From December 2019 to January 2020, Sara Ataya picked up Suanphairin's kids from Suanphairin's home in Louisiana and brought the kids "to spend time with [Sara Ataya] and her husband in Louisiana."[86]

5.   From January 2020 to May 2021, while the kids lived in Louisiana, Sara Ataya "engaged in extensive video chat calls every week" with Suanphairin's kids.[87]

Suanphairin's tortious-interference-with-child-custody cause of action does not arise out of or result from any of these alleged ties. As noted, that cause of action rests on alleged conduct occurring from January 2022 to present. There are no relevant ties between Sara Ataya and Louisiana during that period. Neither the operative amended complaint nor the parties' sworn submissions establish that Sara Ataya took any act to "conpsir[e] with" Khalid Ataya, "aid[ ] and abet[ ]" Khalid Ataya, or "provid[e] him financial and logistical support" in Louisiana during that period.[88] So, Suanphairin fails to make a *prima facie* showing that her cause of action arises out of or results from Sara Ataya's purposeful contact with Louisiana. Because Suanphairin fails to make that showing, Suanphairin fails to carry her burden to make a *prima facie* showing of specific personal jurisdiction over Sara Ataya.[89]

---

[85] *Id.* at ¶ 4.

[86] ECF No. 20-1 at ¶ 2(A).

[87] *Id.* at ¶2(B).

[88] ECF No. 33 at ¶ 11.

[89] The district-court cases on which Suanphairin relies do not change the Court's analysis or the result. *See* ECF No. 37 at 11–12. The courts in those cases concluded that they had specific personal jurisdiction because one or more causes of action arose out of the defendant's forum-related contacts. *See Burns v. Ledru*, No. 12-CV-2646, 2013 WL 1129425, at *8 (D. Colo. Feb. 5, 2013), *report and recommendation adopted*, 2013 WL 1117279, at *1 (Mar. 18, 2013); *Thomas v. Skrip*, 876 F. Supp. 2d 788, 796–98 (S.D. Miss. 2012); *Hylland v. Flaum*, No. 4:16-CV-04060, 2016 WL 6901267, at *6–7 (D.S.D. Nov. 22, 2016); *Ramm v. Rowland*, 658 F. Supp. 705, 709 (S.D. Tex. 1987). This case is different for an obvious reason: Suanphairin has not connected her cause of action to Sara Ataya's purposeful

*     *     *

In sum, Suanphairin fails to carry her burden to make a *prima facie* showing of personal jurisdiction over Sara Ataya. Suanphairin fails to make a *prima facie* showing of general personal jurisdiction over Sara Ataya because Sara Ataya is not domiciled in Louisiana, and Suanphairin has not pointed to anything in the record that would otherwise allow the Court to conclude that Sara Ataya is essentially at home in Louisiana. And Suanphairin fails to make a *prima facie* showing of specific personal jurisdiction over Sara Ataya because her lone cause of action does not arise out of or result from Sara Ataya's purposeful contact with Louisiana. Accordingly, because Suanphairin fails to carry her burden to make a *prima facie* showing of personal jurisdiction, the Court grants Sara Ataya's motion to dismiss for lack of personal jurisdiction and dismisses this action without prejudice under Rule 12(b)(2).

### 2.    Improper Venue, Failure to State a Claim, and Failure to Join a Party under Rule 19

Because the Court grants Sara Ataya's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and dismisses this case without prejudice, the Court need not reach Sara Ataya's alternative arguments under Rules 12(b)(3), 12(b)(6), and 12(b)(7).

---

contact with Louisiana. As noted above, Suanphairin has not identified any alleged act that Sara Ataya took to "conspir[e] with" Khalid Ataya, "aid[ ] and abet[ ]" Khalid Ataya, or "provid[e] him financial and logistical support" in, or directed to, Louisiana from January 2022 to present. ECF No. 33 at ¶ 11.

### E.       Motion for Sanctions Against Suanphairin's Counsel[90]

Finally, Sara Ataya moves the Court to sanction Suanphairin's counsel under Rule 11(b) based on the content of Suanphairin's now-superseded original complaint.[91] Sara Ataya contends that Suanphairin's counsel "lack[ed] any factual or evidentiary basis" for the venue and personal-jurisdiction allegations in the original complaint,[92] and that the original complaint contains "unsupportable and heinous claims of sexual abuse that have already been dismissed" by the state court handling the custody litigation between Suanphairin and Khalid Ataya.[93] When Sara Ataya moved for sanctions based on the content of the original complaint, Suanphairin's motion for leave to file an amended complaint was pending before Judge van Meerveld. In her sanctions motion, Sara Ataya states, without elaboration, that "the proposed [a]mended [c]omplaint does not cure all issues" raised in the sanctions motion.[94]

Suanphairin opposes.[95] She contends that the sanctions motion was "essentially moot[ed]" by the filing of Suanphairin's amended complaint;[96] that the state court's conclusion that Suanphairin failed to prove the sexual-abuse allegations against Khalid Ataya does not mean those allegations are untrue or frivolous;[97] and that "[t]here is significant evidence supporting" her sexual-abuse allegations.[98]

---

[90] ECF No. 24.
[91] *Id.* at 1.
[92] ECF No. 24-1 at 6.
[93] *Id.* at 7.
[94] ECF No. 24 at 2.
[95] ECF No. 29.
[96] *Id.* at 3.
[97] *Id.* at 5–7.
[98] *Id.* at 7.

Rule 11(c) permits the Court to sanction a lawyer or unrepresented party if the Court determines that the lawyer or unrepresented party violated Rule 11(b) after giving the lawyer or unrepresented party notice and a reasonable opportunity to respond. FED. R. CIV. P. 11(c)(1). Rule 11(b) in turn instructs that a lawyer or unrepresented party who "present[s] to the [C]ourt a pleading, written motion, or other paper" makes four certifications "to the best of the [lawyer or unrepresented party's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[.]" FED. R. CIV. P. 11(b). Those four certifications are:

1. The document "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," FED. R. CIV. P. 11(b)(1);

2. "[T]he claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," FED. R. CIV. P. 11(b)(2);

3. "[T]he factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," FED. R. CIV. P. 11(b)(3); and

4. "[T]he denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information," FED. R. CIV. P. 11(b)(4).

Rule 11 includes a 21-day "safe harbor" provision. *See* FED. R. CIV. P. 11(c)(2). Under it, a motion for sanctions cannot be filed until at least 21 days after the motion for sanctions is served on the opposing party. *See id.* "The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.*

The Court cannot impose Rule 11(c) sanctions unless the party seeking sanctions fully complies with Rule 11(c)(2)'s "safe harbor" provision. *See Uptown Grill, LLC v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 388 (5th Cir. 2022) (describing the "safe harbor" provision as "a mandatory prerequisite for a Rule 11 motion (citing *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995)); *see also In re Pratt*, 524 F.3d 580, 588 & n.30 (5th Cir. 2008) ("[W]e have continually held that strict compliance with Rule 11 is mandatory."). To fully comply with the "safe harbor" provision, the motion served and filed must be identical. *See Uptown Grill*, 46 F.4th at 389 (observing that the "safe harbor" provision requires "identicality" between the motion served and filed). To establish "identicality," the party seeking sanctions should append to its *filed* motion the motion it *served* on the opposing party. *See, e.g.*, *Horton v. Tex. Fed'n for Child. PAC, Inc.*, No. 3:22-CV-2736, 2024 WL 2754042, at *3 n.2 (N.D. Tex. May 29, 2024) (reasoning that movant failed to comply with Rule 11(c)(2)'s "safe harbor" provision because the movant did not append to its sanctions motion the motion it served on the opposing party, precluding the court from confirming that the motion served and the motion filed were identical). The movant has the burden to show full compliance with Rule 11(c)(2)'s mandatory "safe harbor" provision. *See generally Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000).

Applying these principles here, the Court denies Sara Ataya's motion for sanctions against Suanphairin's counsel because Sara Ataya fails to carry her burden to show that she fully complied with Rule 11(c)(2)'s mandatory "safe harbor" provision. For starters, Sara Ataya's motion for sanctions and her opening brief in

support of the motion do not mention the "safe harbor" provision or otherwise state that an identical motion and brief were served on Suanphairin's counsel under Rule 5 at least 21 days before the motion for sanctions was filed. *See* Fed. R. Civ. P. 11(c)(2). By failing to show that she satisfied the "safe harbor" provision in her opening motion and brief, Sara Ataya forfeited any argument that she fully complied with that mandatory provision. *See, e.g.*, *United States v. Ponce*, 896 F.3d 726, 728 (5th Cir. 2018) (holding an argument forfeited when it was raised for the first time in the reply); *Jones v. Gusman*, 515 F. Supp. 3d 520, 523 (E.D. La. 2021) (concluding that arguments raised for the first time in reply "are deemed waived").

Forfeiture aside, Sara Ataya simply fails to show that she fully satisfied the mandatory "safe harbor" provision. Sara Ataya raises that provision for the first—and only—time in her reply brief, insisting, without elaboration, that she "adhered to the 21-day safe harbor provision" and that the amended complaint "does not cure all issues outlined" in her sanctions motion.[99] But her cursory treatment of the provision is insufficient to carry her burden to show that she fully complied with it. For example, Sara Ataya does not give any detail about how she "adhered" to the provision's requirements or why the operative amended complaint "does not cure" at least some of the issues raised in the motion—which targeted the now-superseded original complaint.[100] What is more, Sara Ataya did not append to her briefing the motion for sanctions that she served on Suanphairin's counsel, preventing the Court

---

[99] ECF No. 30 at 2.
[100] *Id.*

from confirming that the filed and served sanctions motions are identical. *See Uptown Grill*, 46 F.4th at 389; *see also Horton*, 2024 WL 2754042, at *3 n.2.

Accordingly, for each of these independent reasons, the Court denies Sara Ataya's motion for sanctions against Suanphairin's counsel.

## III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Sara Ataya's motion[101] to dismiss Suanphairin's original complaint is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Judge van Meerveld's order and reasons[102] denying Suanphairin's motion for limited jurisdictional discovery is **AFFIRMED**. Suanphairin's motion[103] for review of that order and reasons is **DENIED**.

**IT IS FURTHER ORDERED** that Suanphairin's motion[104] to continue the Court's consideration of Sara Ataya's motion to dismiss pending the completion of limited jurisdictional discovery is **DENIED**.

**IT IS FURTHER ORDERED** that Sara Ataya's motion[105] to dismiss Suanphairin's amended complaint is **GRANTED**. This action is **DISMISSED** without prejudice for lack of personal jurisdiction. A final judgment will follow in accordance with Federal Rule of Civil Procedure 58.

---

[101] ECF No. 8.
[102] ECF No. 32.
[103] ECF No. 34.
[104] ECF No. 15.
[105] ECF No. 35.

**IT IS FURTHER ORDERED** that Sara Ataya's motion[106] for sanctions is **DENIED**.

New Orleans, Louisiana, this 25th day of September, 2024.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[106] ECF No. 24.